UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER R. RUPP and RYAN W. RUPP,<br><br>                 Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                 Defendants. | Case No. 06cv0515 H (WMc)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISQUALIFY DEFENDANTS' EXPERT DR. STEVEN PLAXE** |

**I.**

**INTRODUCTION**

On July 11, 2008, counsel for the parties in the above-entitled matter contacted the Court to request a telephonic Discovery Conference in accordance with Civil Local Rule 26.1(e) and this Court's Chamber's Rules regarding discovery disputes. The Court set a schedule for lodgment of a Joint Statement of Dispute and held the requested teleconference on July 28, 2008. [Doc. Nos. 60, 63.] The Court held a further teleconference with counsel on July 31, 2008 and August 15, 2008. [Doc. Nos. 66, 69.] Following the August 15, 2008 teleconference, the Court ordered further information regarding a proposed firewall procedure with respect to defense expert, Dr. Steven Plaxe. [Doc. No. 69.] On August 21, 2008, the Court held a further discovery teleconference. [Doc. No. 71.] Following the August 21, 2008 teleconference, the parties lodged a chronology of dates relevant to the retention of Dr. Plaxe. The Court held an additional

discovery teleconference on September 12, 2008. [Doc. No. 74.]

## II.

## BACKGROUND

This case arises from the medical treatment of Plaintiff Amber Rupp at the Naval Medical Center San Diego ("NMCSD") on June 16, 2003, where she underwent tumor removal surgery. [Complaint, para.8, Plaintiff's Responses to Defendant's First Set of Interrogatories, 2:20-3:4.] During the surgery, Plaintiff's left external iliac artery was inadvertently severed and then repaired. *Id.*

Plaintiff alleges severe circulatory problems as a result of the complications of surgery and seeks non-economic damages for pain and suffering, loss of enjoyment of life, grief, anxiety and emotional distress. [Complaint, para.17; Plaintiff's Responses to Defendant's First Set of Interrogatories, 4:14-16.] Plaintiff also seeks economic damages from Defendant including past, present and future wage loss. [Complaint, para.17; Plaintiff's Responses to Defendant's First Set of Interrogatories, 4:10-12, 13:1-7.]

Substantial discovery has occurred in this case. Plaintiff has already been examined by: (1) Robert B. Hall Ph.D., her Vocational Rehabilitation Consultant, and (2) her vascular surgery expert, David Cossman, M.D., Medical Director of Vasular Trauma at Cedars-Sinai Medical Center. Plaintiff has also undergone independent medical examinations with Defendant's experts: (1) Charles Jablecki, M.D., a Board Certified Neurologist and Diplomate of the American Board of Psychiatry and Neurology; (2) Walter Strauser, M.D., a Board Certified Physiatrist and Psychiatrist and Diplomate of the American Board of Pain Medicine; and (3) Ralph Dilley, M.D., Chief of Surgery at Scripps Green Hospital. In addition, Plaintiff has been examined by Defendant's vocational rehabilitation expert.

Both sides have designated multiple experts. Defendant has retained Dr. Steven Plaxe ("Plaxe"), a gynecologic oncologist at UCSD Medical Center ("UCSD"), to testify on its behalf. All the experts have been deposed, including Plaxe.

///

///

# III.

# ARGUMENTS

**A. Key Chronology**

Following is a chronology relevant to the issue of whether Dr. Steven Plaxe, M.D. ("Plaxe") should be excluded as an expert witness.

| DATE | EVENT |
|---|---|
| July 23, 2004 | CT scan of abdomen and pelvis at NMCSD reveal possible right ovarian cyst. |
| December 20, 2004 | Dr. O'Neill at NMCSD notes right ovarian cyst.[1] |
| February - March, 2006 | Plaintiff's care is transferred from NMCSD to UCSD. |
| August 1, 2007 | Defendant designated Plaxe as an Expert witness. |
| October 27, 2007 | Dr. O'Neill refers Plaintiff for another interventional procedure to drain her cyst. |
| November - December, 2007 | Dr. Hall, interventional radiologist at NMCSD, tells Plaintiff that the right ovarian cyst has gone away. |
| March 20, 2008 | Dr. Kansal refers Plaintiff to "OB-GYN Plax" for right pelvic pain. |
| April 2, 2008 | Deposition of Dr. Plaxe. |
| May 1, 2008 | Plaintiff receives authorization from Tricare for visit to UCSD GYN. |
| June 2, 2008 | CT scan of abdomen/pelvis done, shows right ovarian mass. |

---

[1] Dr. O'Neill made similar notations on February 15, March 9 and September 27 2005 and again on October 13, 2007.

| | |
|---|---|
| June 3, 2008 | Plaintiff is admitted to UCSD for infection on wrist; Plaintiff told by Dr. Maynard of right ovarian cyst, that "intervention" for it is required because it is causing trouble; Dr. Maynard explained the need for medical management around any surgery for the cyst, including anticoagulation management, infection and wound healing. |
| June 5, 2008 | Plaintiff discharged with notation of follow-up with GYN on June 17, 2008. |
| June 9, 2008 | Plaintiff's counsel sends email to AUSAs re: Please caution Dr. Plaxe. |
| July 5 -6, 2008 | Plaintiff receives a phone call from "D'Angelo" in Dr. Plaxe's office, in which D'Angelo informs Plaintiff that Dr. Plaxe has all of her records and is eager to see her. D'Angelo requests that Plaintiff call Monday (July 7) morning to arrange an immediate appointment. |
| July 7, 2008 | Plaintiff's counsel telephones AUSAs to report the contact from Dr. Plaxe's office and to complain that it is improper for Dr. Plaxe to have contact with this Plaintiff. |

**B. Plaintiff's Position**

Plaintiff contends Dr. Plaxe should be stricken as a defense expert because his presence represents an insurmountable conflict of interest since Dr. Plaxe could be involved in Plaintiff's medical care at UCSD. Plaintiff has recommended several protections to protect against this conflict. For example, Plaintiff drafted a protective order the provisions of which required Dr. Plaxe and UCSD to erect an impenetrable "firewall" to prevent Dr. Plaxe from: (a) participating in Plaintiff's medical care directly or indirectly through consultation with Plaintiff's treating physicians at UCSD, (b) having access to Plaintiff's person during her visits to UCSD and (c) unauthorized and unlimited access to Plaintiff's medical records. Further, Plaintiff argues that it would be unfair and

a financial hardship to force her to get her gynecological oncology care at some Southern California facility outside San Diego County. Despite diligent efforts, Plaintiff has been unable to find another gynecologic oncologist to treat her in San Diego County.

**C. Defendant's Opposition**

Defendant argues that there is no conflict and that, in any event, no "firewall" is desireable or feasible for several reasons. First, Plaxe has a teaching role at UCSD and may need access to Plaintiff's person and records as he teaches Interns and Residents during his rounds in the OB-GYN ONCOLOGY Department. Second, as a vital member of a small group of OB-GYN Oncologists, Plaxe must be free to be consulted or called in to assist in any emergency involving any OB-GYN Plaintiff. To do otherwise could compromise Plaintiff's health and subject Plaxe and UCSD to civil liability for failing to render proper care to Plaintiff. Third, there is no way to predict when Plaintiff might need emergency care from an OB-GYN Oncologist. Given the small size of the department and the fact that the doctors work on a varying rotational basis with no obligation to be available when they are not "on call", Plaintiff could have an emergency when Plaxe is on duty and no-one would be available to step in for him. Defendant asserts:

> **"Dr. Plaxe...and each of his associates in gynecologic oncology take call once ever five weeks. During that time, the person on call is responsible for emergencies, responding to consult requests from other services (including General Gynecology), calls that may come in from patients needing medication refills, and rounding on all patients on weekends, in addition to those days when he or she is in the operating room. When they are not on call, physicians do not have those responsibilities and are not required to accept them. Thus, they may be away from San Diego, or engaging in other professional, non-professional and family matters. It would, therefore, be impossible to firewall Dr. Plaxe because it would mean that UCSD would require a back-up call physician for the potential needs of one single patient, Ms. Rupp, over a prolonged period of time. Aside from its enormous administrative burden, a firewall around a specific physician (e.g. Dr. Plaxe) could, therefore, jeopardize a patient's (such as Ms. Rupp's) medical care."**

Defendant, therefore, has strenuously argued that no feasible firewallcan be erected.  Further, Defendant argues that Plaintiff can get her gynecologic oncology care through a respected medical facility in Southern California and not at UCSD.

## IV.

## STANDARD

Federal Courts have "the inherent power to disqualify expert witnesses to protect the integrity of the adversary process, protect privileges that otherwise might be breached, and promote pubic confidence in the legal system." *Hewlett-Packard Co. v. EMC Corp, 330 F. Supp. 1087, 1092 (N.D. Cal. 2004)*.  *Hewlett-Packard* sets forth the relevant standard:

> **Although courts have declined to use a brightline rule to determine whether an expert should be disqualified..., they have articulated general principles.  In particular, disqualification of an expert is warranted based on a prior relationship with an adversary if (1) the adversary had a confidential relationship with the expert and (2) the adversary disclosed confidential information to the expert that is relevant to the current litigation."** *At 1092-1093* **(Citations omitted.)**

"Disqualification is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely." *Id.*  The burden seeking the disqualification bears the burden of proving the disqualification is necessary.  *Crenshaw vs. Mony Life Ins. Co., 318 F. Supp. 1015, 1026 (S.D. Cal. 2004)*.  "In reaching its decision, the Court weighs competing considerations.  It balances the integrity of the judicial process, avoidance of conflicts of interest, ensuring access to expert witnesses with specialized knowledge, and allowing experts to 'pursue their professional calling'." *Id. (quoting English Feedlot, Inc. v. Norden Labs. Inc. 833 F. Supp. 1498, ,1504-1505 (D. Colo. 1993))*  The cases handling this issue focus on the existence and ramifications of an *existing* confidential relationship between the expert witness and the party seeking disqualification. *See Hewlett-Packard v. EMC Corp.* and *Crenshaw v. Mony Life Ins. Co., supra.*

**V.**

**DISCUSSION**

**A. Plaintiff's Oral Motion to Exclude Plaxe**

In the subject case no confidential relationship has yet been formed between Plaintiff and Plaxe. Plaxe is not Plaintiff's treating physician. Further, Plaxe might not actually be called to treat, or consult in connection with, Plaintiff. At this stage there is only a *potential* that Plaxe might treat, or provide consultation concerning, Plaintiff. The Court has not come across any case directly on point and uses *Crenshaw* and *Hewlett-Packard* for guidance.

First, relying on *Crenshaw* and *Hewlett-Packard* it is clear no confidential relationship exists (or has ever existed) between Plaintiff and Plaxe. Plaxe is not, and has never been, Plaintiff's treating physician. Second, Plaintiff has not disclosed any confidential information to Plaxe. *See Hewlett-Packard, supra, at 1093.* Defendant has represented to the Court that Plaxe has not consulted with any other physician at UCSD regarding Plaintiff. The Court does not see any actual, current conflict of interest concerning Plaxe. However, there is the *very real potential* for a conflict of interest down the road if circumstances require another UCSD physician to consult with Plaxe concerning Plaintiff or if Plaxe is called upon to treat Plaxe in some medical emergency. The Court must take a practical approach to this *potential* conflict and weigh the equities involving both parties.

Defendant argues that, by placing her medical condition into issue by filing the subject lawsuit, Plaintiff has waived the right to confidentiality concerning her medical condition. While that statement is true as a general proposition, it misses the point. Plaintiff has the right not to be treated by her adversary's expert. Although Courts rely on the expertise and neutrality of experts, Courts must recognize how easily it is for an expert to unconsciously gravitate into an adversarial

position, if for no reason other the natural result of defending his or her own professional opinions. Moreover, it could give Plaxe an unfair advantage to Plaintiff's detriment if he were able to present himself at trial as one of Plaintiff's physicians *and* as Defendant's expert.

Plaintiff has also argued in part that, if Plaxe is permitted to remain as Defendant's expert, he would be able to have access to Plaintiff's medical records. That argument, however, fails because Plaintiff's medical records since the surgery in question are completely discoverable. Thus, Plaxe already has "access" to Plaintiff's medical records by stipulation or subpoena. Nonetheless, Defendant *already has* access to Plaintiff's medical records and Plaintiff would not be able to deny Defendant access to those records on grounds of confidentiality or the doctor-patient privilege.

In line with those decisions, the Court needs to consider *how* the potential conflict arose. Second, the proximity of the trial date. Third, the Court must consider the potential or likely consequences of *not* striking the expert. Fourth, what will be the prejudice to the party whose expert is stricken. Finally, do the equities weigh more strongly in favor of a particular party? Although the instant litigation is very important, Ms. Rupp's medical care is a pre-eminent concern. The litigation should not drive the decision as to where or when she obtains the expert medical care she needs. That Ms. Rupp may require the services of a gynecologic oncologist, a narrow and highly specialized field, makes her health care management even more important.

It is also important that the current problem did not arise as the result of any unethical complicity between Plaintiff's treating physician and defense counsel as in *Miles vs Farrell, 549 F. Supp. 82 (N.D. Ill. 1982),* upon which Plaintiff relies.

Furthermore, the trial date is November 4, 2008. Discovery is closed. The Pre-Trial Conference Order was signed on May 19, 2008. Moreover, the complaint in this matter was filed on March 9, 2006. There is not enough time for Defendant to find another gynecologic oncologist

to serve as an expert witness, have that expert review the medical records and then submit to deposition before the trial. It is time for trial.

Pursuant to this Court's order, Plaintiff has tried to find another qualified gynecologic oncologist in San Diego County (and not a member of the UCSD Medical Center) to whom her treatment could be referred so that Dr. Plaxe could continue as the Defendant's expert. All available gynecologic oncologists in San Diego County have declined to treat or consult with Ms. Rupp. The most commonly cited reason for their declination is their (business or professional) relationship with Dr. Plaxe or one of Defendant's physicians who provided the challenged care to Plaintiff at NMCSD. Despite diligent effort Plaintiff has not been able to find another gynecologic oncologist in San Diego. Defendant's efforts, if any, have been equally unavailing.

Defendant has strenuously argued that Plaintiff can find another gynecologic oncologist somewhere in Southern California. The Court initially advocated this same position. However, requiring Plaintiff to seek treatment in some other Southern California County is unfair. Plaintiff is a single mother with 3 children all under the age of 10. She has little family in San Diego County. Plaintiff's medical condition could require frequent trips outside San Diego County to obtain the necessary medical care. Moreover, she may also need extended medical stays. It would be a financial burden on Plaintiff to make such trips and, on occasion, to have overnight hotel stays in connection with her trips. Such trips could also be a financial burden on family and friends who may want to visit her. Although the Government would be willing to *reimburse* Plaintiff for her trips, the Government will not (or can not) *advance* the necessary funds. Plaintiff's expenditures, even with eventual reimbursement, would be an unfair burden on her. Moreover, given Plaintiff's medical condition, she may occasionally not be able to drive herself to medical appointments and will be forced to rely on family and friends for transport. It is unfair to place that burden on Plaintiff, especially in light of the fact that she did nothing to create the current situation.

Moreover, in February or March, 2006, Plaintiff's care has already been transferred once from NMCSD to UCSD because of the lawsuit. Balancing the equities, it is not fair to require Plaintiff to transfer part of her medical care again, and out of the county, especially since Plaintiff may require hospitalization or emergent care.

Moreover, on August 1, 2007, approximately eighteen months *after* Plaintiff's care was transferred from NMCSD to UCSD, Defendant designated Plaxe as a gynecologic oncology expert. Considerably before that designation Defendant should have anticipated the current problem. Obviously, Defendant knew before August 1, 2007 that it would need a gynecologic oncologist to testify regarding Plaintiff's medical condition. Defendant should have explored the possibility of the very problem the Court must now resolve. Such an analysis would have highlighted this issue very early on and Defendant presumably would have elected not to use Plaxe so as to avoid this very problem. Given the equities discussed herein, Defendant, rather than Plaintiff, should bear the adverse consequence of not having foreseen, and therefore avoided, this issue.[2]

Defendant has represented to the Court that "Plaxe's opinions are limited solely to the issue of whether Dr. Harrison (a Gynocological-Oncologist surgeon at Naval Medical center San Diego "NMCSD") met the relevant standard of care in performing a gynecological surgery on Plaintiff on on June 16, 2003. Plaxe was designated as a standard of care expert witness regarding that singular surgery and has already offered his final opinion and the ones he will offer at trial on that subject via his rule 26 report and deposition testimony. Plaxe ...will not...be rendering opinions outside of addressing whether Dr. Harrison met the standard of care on June 16, 2003. Plaxe will not be

---

[2] Obviously, if Defendant *did* consider this potential problem before or at the time of consulting with or retaining Plaxe, the equities would weigh even more heavily in Plaintiff's favor.

testifying regarding Plaintiff's current condition or about her subsequent gynecologic oncologic care at UCSD or elsewhere."[3]  The Court expressly relies on this representation.

It is significant that the trial will not be before a jury.  It shall proceed as a bench trial before District Judge Marilyn Huff.   Therefore, there is no concern that a jury might be prejudiced in Defendant's favor in the event Plaxe must treat or consult concerning Plaintiff and, on that basis, testify both as Plaintiff's treating physician *and* as Defendant's standard-of-care expert on gynecologic oncology issues.

Finally, all counsel have been very diligent in preparing this case for trial.  Both sides have been aggressive but professional.  Each side has complied with the Court's orders and have been very responsive when the Court has requested information.  But, in weighing all the equities, the scale tips decidedly in favor of Plaintiff on this discreet issue.

## VI.

## CONCLUSION AND ORDER THEREON

For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Exclude Plaxe as follows:

    1.    Defendant may continue to retain Plaxe as an expert witness.

    2.    Except on an emergency basis, Plaxe may not treat or examine Plaintiff.

    3.    Plaxe may not consult with any other health care professional at UCSD regarding Plaintiff's medical condition, except as required to render emergency care for Plaintiff's health and safety.

    4.    If a medical emergency involving Plaintiff should arise and require Plaxe's involvement, he must immediately notify Defendant's counsel who must

---

[3]  Defendant's letter brief dated August 27, 2008, pg. 2.

immediately notify Plaintiff's counsel.  If Plaintiff's counsel choose to depose Plaxe in connection with such emergency care, Defendant must pay Plaxe's expert witness fees in connection with that deposition and the cost of the deposition.

5. Plaxe's opinions offered at trial shall be strictly limited to the sole of issue of whether Dr. Harrison met the standard of care on June 16, 2003.  Plaxe may not offer opinions on any other issue.  Defendant shall not have Plaxe offer any opinions regarding Plaintiff's current condition or about her subsequent gynecologic oncologic care at UCSD or elsewhere.  Unless permitted by The Honorable Marilyn L. Huff, Plaxe shall not testify regarding (a) Plaintiff's current medical condition *or* (b) her subsequent gynecologic oncologic care at UCSD or elsewhere.

6. On or before October 1, 2008  Defendant shall have Plaxe sign and return to the Court that certain **"Agreement To Be Bound By Court's Order of September 16, 2008"**.

7. Defendant's counsel shall deliver to each physician in Plaxe's department at UCSD Medical Center a photocopy of pages 11 and 12 of this Order and confirm in writing to the Court that Defendant has fully complied with this Order.

**IT IS SO ORDERED.**

DATED: September 16, 2008

*/s/ W McCurine Jr.*

Hon. William McCurine, Jr.
U.S. Magistrate Judge, U.S. District Court